**Ira T. FINLEY, d/b/a, Ira T. Finley Investments, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 91–1321C.**

United States Court of Federal Claims.

Aug. 16, 1994.

Ira T. Finley, pro se.

Kathryn A. Bleecker, Washington, DC, with whom were Jeanne A. Davidson, Asst. Director, David M. Cohen, Director, Commercial Litigation Branch, Civil Div., and Stuart M. Gerson, Asst. Atty. Gen., U.S. Dept. of Justice, for defendant. Joseph R. Standell, F.A.A., of counsel.

## OPINION

SMITH, Chief Judge.

This case involves a claim for bid protest and bid preparation costs, lost profits and interest by plaintiff Ira T. Finley. Plaintiff seeks recovery for these items for a bid submitted in response to a 1984 Federal Aviation Administration (FAA) solicitation for facilities and related services to replace those provided by Cameron University. This

opinion addresses the defendant's partial motion to dismiss and motion for summary judgement. After careful consideration of the briefs filed by both parties and after oral argument, the court must grant defendant's partial motion to dismiss as it applies to the (1) lost profits, and (2) interest. The court must also grant defendant's motion for summary judgment with respect to the bid protest and preparation costs. Plaintiff, who is not a lawyer, did an effective job of representing himself and the result in this case in no way reflects a lack of effective advocacy by plaintiff, as the transcript of the oral argument shows.

## FACTS

The FAA operated a management training school on the campus of Cameron University in Lawton, Oklahoma. In late 1984, the FAA issued a solicitation for offers for facilities and related services to replace those provided by Cameron University. Mr. Ira T. Finley, on behalf of Ira T. Finley Investments, a limited partnership that was to have formed upon the award of the contract, was one of 10 offerors who submitted bids in response to the solicitation. In 1985 the source evaluation board evaluated the offers and submitted its findings to the source selection official who selected Embry–Riddle Aeronautical University, located in Bunnell, Florida.

Mr. Finley filed a timely protest with the Comptroller General, General Accounting Office (GAO), alleging that the FAA improperly evaluated the proposals. On July 25, 1986, the Comptroller General denied the protest in part and dismissed it in part. With one exception,[1] the GAO rejected Mr. Finley's contentions that the FAA had failed to evaluate the technical proposals in accordance with the criteria set out in the solicitation and the evaluation plan. The GAO found that the solicitation advised offerors that their financial condition, including their ability to adequately finance the contract, would be assessed. Therefore, the GAO held that the FAA's evaluation of technical and business matters, including risk assessment, was

---

1. One sub-factor concerning the distance between Embry–Riddle's site and the nearest commercial airport.

supported by the record and that the source evaluation board's report formed a proper basis for the official's decision. When Mr. Finley requested reconsideration, GAO denied it because his arguments were the same as those previously made or were those which should have been presented at the initial protest. Mr. Finley then filed a complaint in the United States District Court for the Western District of Oklahoma, seeking a temporary restraining order against the award and execution of the contract, an order compelling the award of the contract to Mr. Finley, and related relief. The district court granted defendant's motion to dismiss on the basis that the court lacked the authority to grant the contract to Mr. Finley because it could not determine that even if the alleged wrongs in the selection process were eliminated that Mr. Finley would be awarded the contract. On July 29, 1991, Mr. Finley then filed this action.

## DISCUSSION

### I. Bid Protest and Preparation Costs.

█ When the government solicits bids, there is an implied condition that the government will honestly consider each bid. *Continental Business Enterprises, Inc. v. United States*, 452 F.2d 1016, 196 Ct.Cl. 627, 629 (1971); *Keco Indus., Inc. v. United States*, 428 F.2d 1233, 192 Ct.Cl. 773, 780 (1970) (*Keco I*); *Heyer Prods. Co. v. United States*, 140 F.Supp. 409, 135 Ct.Cl. 63, 69 (1956). If this implied condition is breached then the bidder may seek "only those costs incurred in preparing its technical proposals and bids." *Keco I*, 192 Ct.Cl. at 785.

█ In order to establish that the government breached its implied condition to treat all bids fairly and honestly, the disappointed bidder must show that the government's actions were arbitrary and capricious. *Crux Computer v. United States*, 24 Cl.Ct. 223, 225 (1991), citing *Keco Indus., Inc. v. United States*, 492 F.2d 1200, 203 Ct.Cl. 566, 574 (1974) (*Keco II*). Four factors must be examined by the court in determining if the implied duty was breached. First, the court must examine whether there is a presence or absence of bad-faith by the government.

Plaintiff must demonstrate that the agency acted with specific intent to injure it. *Contract Custom Drapery Serv., Inc. v. United States*, 6 Cl.Ct. 811, 817 (1984). As defendant notes, this burden is particularly hard to meet because there is a strong presumption that government officials act properly and in good faith. *Eagle Construc. Corp. v. United States*, 4 Cl.Ct. 470, 479 (1984). Defendant points out that plaintiff does not specifically allege bad faith upon the part of the government, but rather disagrees with their technical evaluation. *La Strada Inn, Inc. v. United States*, 12 Cl.Ct. 110, 113–14 (1987) (mere disagreement does not equal bad faith). In reviewing the GAO's analysis of these same arguments, the court believes it is clear that the FAA's evaluation of the proposals was reasonable and within its discretion.

█ Second, the court must determine whether there was a reasonable basis for the government's actions. In evaluating the proposals, FAA considered several factors: technical score and rank; offered price; evaluated price and rank; business management; and risk assessment. The three categories examined most closely were technical evaluation, evaluated price, and business management. Because Embry–Riddle was ranked or rated higher in both evaluated price and business management, even if Finley was given a higher technical evaluation as it thought it deserved, Embry–Riddle would still rank higher in two areas. Therefore, it was reasonable and consistent with the solicitation to award Embry–Riddle the contract. The court finds that there exists a very reasonable basis behind the government's evaluation.

Third, the government must not have abused its discretion in awarding the contract to Embry–Riddle. "[T]he court should not substitute its judgment on such matters for that of the agency, but should intervene only when it is clearly determined that the agency's determinations were irrational or unreasonable." *CACI Field Services, Inc. v. United States*, 13 Cl.Ct. 718, 725 (1987) (citations omitted), *aff'd*, 854 F.2d 464 (Fed.Cir. 1988). The court finds that the FAA's scoring determinations on the above listed fac-

tors were reasonable as all evaluations clearly fit within the guidelines provided to give each factor a specified number of points. Also as demonstrated in the above paragraph, the decision to award the contract as a whole to Embry–Riddle was reasonable. In addition, it should be noted that the government has "a wide degree of discretion in determining whether a bid is 'most advantageous to the Government.'" *Keco II*, 492 F.2d 1200, 203 Ct.Cl. at 575. The FAA determined that Embry–Riddle's bid was the most advantageous and there is no evidence of an abuse of discretion.

Finally, the government must not violate any statute or regulation. Defendant states that Mr. Finley does not specify the procedures allegedly violated and GAO found no such violations. A proven violation of a regulation may, but need not necessarily provide a basis for recovering proposal costs. *Aviation Enterprises, Inc. v. United States*, 8 Cl.Ct. 1, 20 (1985). Here, the court does not even find an alleged violation.

Defendant recognizes that in *Crux Computer Corp. v. United States*, 24 Cl.Ct. 223 (1991), the court determined that it had the jurisdiction to consider claims for bid protest costs, in addition to bid preparation costs. *Id.* at 226. The court determined that bid protest costs were recoverable because they could be ascertained quite readily. *Id.* (disagreeing with *AT & T Technologies, Inc. v. United States*, 18 Cl.Ct. 315, 322 (1989)). Defendant disagrees with the court's holding in *Crux Computer*. Defendant requests that the court follow the precedent of *AT & T Technologies*, which held that recovery is limited to bid and proposal preparation costs. *AT & T*, 18 Cl.Ct. at 321. *See also Coflexip & Services, Inc. v. United States*, 20 Cl.Ct. 412, 416 (1990); *La Strada Inn, Inc. v. United States*, 18 Cl.Ct. 315, 322 (1989); *Contract Custom Drapery Service v. United States*, 6 Cl.Ct. 811, 819 (1984), *aff'd*, 785 F.2d 321 (Fed.Cir.1985); *Excavation Construc., Inc. v. United States*, 494 F.2d 1289, 204 Ct.Cl. 299, 301 (1974). Defendant argues that even if the court determines that it can award bid protest costs, plaintiff should not be allowed to recover them because he did not prevail in his claims before the GAO. *See AT & T*, 18 Cl.Ct. at 326.

Mr. Finley, however, argues that he was not provided an adequate opportunity to present his case to the GAO. Defendant contends that the GAO fully and fairly considered Mr. Finley's allegations and there is no direct evidence to the contrary. The court finds that because the GAO's decision was reasonable, and persuasive, it should be accorded deference by this court in determining whether Mr. Finley is entitled to receive bid protest costs. *Honeywell v. United States*, 870 F.2d 644, 647 (Fed.Cir.1989); *Carothers v. United States*, 18 Cl.Ct. 745, 751 n. 6 (1989); *CACI Field Services, Inc. v. United States*, 13 Cl.Ct. 718, 731 n. 28 (Cl.Ct. 1987), *aff'd*, 854 F.2d 464 (Fed.Cir.1988). Mr. Finley also challenges the district court's determination. However, as defendant correctly points out, this court does not possess jurisdiction for such review. *Lark v. United States*, 17 Cl.Ct. 567, 571 (1989); *Golder v. United States*, 15 Cl.Ct. 513, 517 (1988).

Defendant argues that it is unable to determine from Mr. Finley's complaint to what extent he is seeking bid preparation costs and to what extent he is seeking bid protest costs. The complaint states that he is seeking expenses incurred "in the preparation of the bid proposal and the subsequent pursuit of the protest and appeal in the amount of $120,621.06...." First Amended Complaint, pp. 1–2. Expenses which would be compensable as bid preparation costs are those incurred (a) researching specification; (b) reviewing bid forms; (c) examining cost factors, and; (d) preparing draft and actual bids. *T & H Company*, 54 Com.Gen. 1021, 1027–1028 (1975). Expenses incurred to apprise the agency of the facts, to persuade the agency on the proper interpretation of the solicitation, and to pursue a protest are to be categorized as protest costs. *Id.*

Plaintiff cites *Crux Computer* for the position that bid protest costs can be awarded to an unsuccessful bidder who demonstrates the government did not treat his bid honestly and fairly. Plaintiff maintains that the claim clearly establishes that the government did not treat his bid fairly. Mr. Finley argues that the government's decision to award the

contract to another bidder was arbitrary and capricious. Specifically, Mr. Finley challenges certain aspects of the government's technical evaluation and determination of price and cost considerations. Mr. Finley states that he is "not alleging bad faith per se but that several actions taken by the FAA during the evaluation process could easily be construed as indicators of bad faith." Pl. Response Br. at 3. He alleges that his bid was not properly evaluated with respect to the number of available weekday airline seats serving Lawton, Oklahoma. The information Mr. Finley provided was based on weekday as opposed to weekly emplanements only, therefore, when the government modified Mr. Finley's proposal using data from another bidder, Mr. Finley asserts this evidenced bad faith. Plaintiff also alleges that the government arbitrarily inflated his local transportation costs without notifying him and improperly considered offerors' evaluated prices, rather than their offered prices, both of which benefitted Embry–Riddle.

The court fails to find evidence of bad faith in the technical evaluation, as the number of airplane seats is something the bidder had no control over and a low number of seats did not constitute a deficiency. Therefore, plaintiff was not harmed by the FAA relying on information provided by the other bidder and this did not constitute an unreasonable action. Also, in the other areas Mr. Finley disputed (recreation and entertainment opportunities, police and fire protection, and academic environment), Mr. Finley received a higher overall score so increasing it would not have aided his bid. With regard to Mr. Finley's disputes about the transportation costs, if he objected to the method of evaluating the prices this should have been raised when the solicitation was issued. Therefore the court finds no basis for awarding Mr. Finley bid protest or preparation costs. However, the court has evaluated the government's position that protest costs may not be awarded under any circumstance. This position must be rejected. It is the court's opinion that *Crux Computer* enunciated the correct rule. Therefore, the court grants the government's motion for summary judgment as to bid protest and preparation costs.

## II. Lost Profits.

■ Mr. Finley also seeks to recover lost profits (which he later terms "lost income") in the amount of $1,561,390. However, the court notes that lost profits have consistently been denied even in cases where the contract was actually awarded to the plaintiff or was found to have been wrongfully denied. *See Delta Data Systems Corp. v. Webster,* 755 F.2d 938, 940 (D.C.Cir.1985); *Rhen v. United States,* 17 Cl.Ct. 140, 143–44 (1989); *Ralph Turnbull—Claim for Costs and Lost Profits,* B–238399, February 12, 1990, 90–1 CPD ¶ 183; *Consolidated Devices Inc.,* B–228065, August 24, 1987, 87–2 CPD ¶ 201. Therefore, the court finds that with respect to lost profits Mr. Finley has failed to state a claim upon which relief can be granted and this claim must be dismissed.

■ Plaintiff asserts that he is entitled to lost profits as they are fixed figures not subject to change during the contract. Plaintiff argues that *Crux Computer* stands for the proposition that lost profits were not allowed because they were highly speculative. Plaintiff's argument is that in this case the figures were based on known, fixed dollar amounts and time. However, the court finds that the lost profits sought were speculative. For example, the support services were adjusted annually based upon percentage changes in the Consumer Price Index, therefore this figure cannot be determined with any certainty. Also, the utility costs were to be adjusted based upon the actual incurred costs. This too cannot be determined with certainty. Even if these figures could be easily calculated, the court finds that lost profits are not awarded because it is speculative as to whether the disappointed bidder would have received the contract at all. *Keco I,* 192 Ct.Cl. at 784. It is clear that plaintiff cannot establish that he would have received the award.

Finally, under our free market system profits are more than just a return on capital. They are the reward for risk and entrepreneurship and are generally speculative as a matter of law. In certain contracts where profits are fixed by contract or law they may be awarded. Also, the courts have often

spoken of awarding "lost profits" when they are really referring to that component of income which represents a return on capital. In this case whether any profit was made would hinge on a complex set of factors both within and beyond plaintiff's control. They would be speculative both in the common factual sense, and as a matter of law. Therefore, with respect to lost profits and interest defendant's motion to dismiss must be granted.

## CONCLUSION

While the court finds that *Crux Computer* is a correct statement of the law with respect to bid protest costs, there is no basis for such an award in this case. Under *Crux Computer*, a prerequisite for recovery is that the bidder is successful. This is not the case here. Likewise, none of the factual or legal predicates exist for awarding bid preparation costs. Therefore, the government's partial motion to dismiss is granted with respect to the claim for lost profits. The government's motion for summary judgment is granted with respect to the claim for bid protest and bid preparation costs. Further, there is no basis for awarding interest in this case. Therefore plaintiff's claim must be dismissed with respect to these items also.

**IT IS SO ORDERED.**