William L. SINGER, Petitioner,

v.

OFFICE OF THE SENATE
SERGEANT AT ARMS,
Petitioner,

v.

Office of Senate Fair Employment
Practices, Respondent.

Nos. 98–6002, 98–6003.

United States Court of Appeals,
Federal Circuit.

May 6, 1999.

Robert E. Deso, Deso, Thomas, Spevack, Weitzman & Rost, P.C., of Washington, DC, argued for petitioner, William L. Singer.

Jean M. Manning, Senate Chief Counsel for Employment, and Toby R. Hyman, Senate Assistant Counsel for Employment, United States Senate, of Washington, DC, argued for petitioner, Office of the Senate Sergeant At Arms. With them on the brief were Diana L. Embrey, Timothy W. Millet, Carolyn M. Plump, and Rebecca A. Womeldorf, Senate Assistant Counsels for Employment.

A. Christopher Bryant, Assistant Senate Legal Counsel, United States Senate, of Washington, DC, argued for respondent, Office of Senate Fair Employment Practices. With him on the brief were Thomas B. Griffith, Senate Legal Counsel, Morgan J. Frankel, Deputy Senate Legal Counsel, and Steven F. Huefner, Assistant Senate Legal Counsel.

Before RICH, RADER, and GAJARSA, Circuit Judges.

PER CURIAM.

Plaintiff–Appellant William Singer (Singer) and Defendant–Appellant Office of the Senate Sergeant at Arms (OSSA) each appeal the Senate Select Committee on Ethics' (Senate Ethics Committee's) de-

cision regarding Singer's claims for attorney fees and costs. *In the Matter of William L. Singer, the Employee, and the United States Senate Sergeant At Arms (Capitol Police), the Employing Office,* No. 94–010 (Office of the Senate Fair Employment Practices Oct. 6, 1997) (*October 6, 1997 Senate Ethics Committee Decision*). Singer incurred these fees and costs in his employment discrimination suit against the OSSA. The Senate Ethics Committee, reversing in part the Office of Senate Fair Employment Practice (OSFEP) Hearing Board's (Hearing Board's) decision, held that Singer was a prevailing party and entitled to attorney fees and costs, but substantially reduced the amount that the Hearing Board had awarded. Because substantial evidence does not support the Senate Ethics Committee's decision, and the Senate Ethics Committee based its conclusion that Singer is a prevailing party on an erroneous interpretation of law, this court reverses.

## I.

The OSSA employed Singer as an officer with the United States Capitol Police (USCP). This appeal represents the final stage of Singer's employment discrimination suit against the OSSA, which Singer filed with OSFEP in 1994 under the Government Employee Rights Acts of 1991 (GERA). *See* 2 U.S.C. §§ 1201–1202 (1994), *amended by* Pub.L. No. 104–1, Title V, § 504(a)(1) (Jan. 23, 1995); 2 U.S.C. §§ 1203–1218 (1994), *repealed by* Pub.L. No. 104–1, Title V, § 504(a)(2) (Jan. 23, 1995).[1] The GERA gave Senate employees the right to an administrative adjudication of certain employment discrimination claims and subsequent judicial review by this court. *See id.*

From 1991 to 1993, Singer received four "CP–535" disciplinary notices from the USCP, for violating the USCP's "call-off"

rule requiring an officer to notify his supervisor if unable to report for scheduled duty. Under the USCP's progressive system of discipline, the USCP warned Singer after his fourth violation that another violation would trigger a fifth CP–535 and a recommendation for termination. On October 25, 1993, Singer violated the policy again and the OSSA issued him a fifth CP–535. Singer then informed the USCP on October 28, 1993, for the first time, that he was an alcoholic. He claimed that his repeated violations of the call-off policy were due to his alcoholism. Singer urged the USCP that alcoholism is a legally cognizable disability and that the USCP therefore should excuse all of his past violations of the call-off policy.

The USCP took steps to accommodate Singer's alcoholism and encourage him to receive treatment, including granting Singer advance leave to obtain in-patient treatment and giving him a restricted duty position during his rehabilitation. The USCP, however, also continued disciplinary proceedings in its Disciplinary Review Board (DRB) for Singer's fifth CP–535. After a hearing, the DRB recommended to USCP Chief Abrecht that Singer be terminated. Chief Abrecht instead, however, imposed a written agreement (Last Chance Agreement) upon Singer, whereby the DRB would vacate its termination recommendation if Singer complied with the terms of the Last Chance Agreement for two years. The terms included limiting incidents of tardiness and absence, and serving a ten-day suspension without pay.

Although not terminated, Singer proceeded to file a formal GERA complaint with OSFEP. Singer alleged that the OSSA had violated the GERA by failing to accommodate his "disabilities" of alcoholism and depression and by subjecting him to unlawful disparate treatment on the basis of his alcoholism. Singer sought

1. Although the Congressional Accountability Act of 1995, Pub.L. No. 104–1, Title I, § 101, *codified at* 2 U.S.C. §§ 1301–1438 (Supp. II 1996), has now superseded the GERA, the Accountability Act contains a saving provision to permit completion of pending GERA cases like this one. *See* 2 U.S.C. § 1435(a)(1) (Supp. II 1996).

compensatory damages of $100,000, compensation for additional medical ailments allegedly caused by the OSSA's actions against him, restoration of sick leave, unconditional rescission of all discipline imposed upon him, and restoration to full duty.

The OSFEP Hearing Board granted Singer partial relief. The Hearing Board ruled that the OSSA was obligated to give Singer a "fresh start" (forgiving past wrongs) and a "firm choice" (between obtaining treatment and being disciplined) after Singer informed the USCP of his alcoholism. *Singer v. Office of the United States Senate Sergeant at Arms (Capitol Police)*, SFEP Case No. 94–010 (Feb. 9, 1995) (*February 9, 1995 Hearing Board Decision*). The Hearing Board found that the OSSA failed to fulfill these obligations. *Id.* Thus, the Hearing Board ordered the USCP to rescind all discipline on Singer, including the conditions of Singer's continued employment and the ten-day suspension. *Id.* The OSSA appealed the Hearing Board's decision to the Senate Ethics Committee, which affirmed. *In the Matter of William L. Singer, the Employee, and the U.S. Senate Sergeant At Arms (Capitol Police), the Employing Office*, OSFEP Case No. SFEP 94–010 (Office of the Senate Fair Employment Practices May 23, 1995) (*May 23, 1995 Senate Ethics Committee Decision*).

Singer then filed a motion with the Hearing Board seeking attorney fees of $49,280.50 and costs of $3,172.42, covering the fees and costs of both the DRB proceedings within the USCP and the GERA claim before the OSFEP. The Hearing Board granted Singer's request in substantial part. *Singer v. Office of the United States Senate Sergeant at Arms (Capitol Police)*, SFEP Case No. 94–010 (March 13, 1996) (*March 13, 1996 Hearing Board Decision*). The OSSA appealed to the Senate Ethics Committee, which modified the award to compensate Singer only for the OSFEP proceedings because the DRB process "was not an integral part of the

OSFEP case before the Hearing Board." *In the Matter of William L. Singer, the Employee, and the U.S. Senate Sergeant At Arms (Capitol Police), the Employing Office*, OSFEP Case No. SFEP 94–010 at 1–2 (Office of the Senate Fair Employment Practices May 28, 1996) (*May 28, 1996 Senate Ethics Committee Decision*). The Senate Ethics Committee ordered the Hearing Board to reduce Singer's fees and costs accordingly. Upon remand the Board reduced his fees and costs to $32,435.98, and $2,909.32, respectively. *Singer v. Office of the United States Senate Sergeant at Arms (Capitol Police)*, SFEP Case No. 94–010 (July 30, 1996) (*July 30, 1996 Hearing Board Decision*).

While Singer's claim for fees and costs was before the Hearing Board and the Senate Ethics Committee, the OSSA appealed the *February 9, 1995 Hearing Board Decision* (the substantive case relating to Singer's discipline) to this court. This court reversed in part, affirmed in part, and remanded. *Office of the Senate Sergeant at Arms v. Office of Senate Fair Employment Practices*, 95 F.3d 1102 (Fed. Cir.1996) (*Singer I*).

This court held that the GERA requires an employer to provide a "reasonable accommodation" to qualifying, disabled employees. This court affirmed the Hearing Board's holding that Singer qualified under GERA, with a disability of alcoholism. *Id.* at 1105–06. However, this court reversed the Hearing Board's determination that the OSSA had not "reasonably accommodated" Singer. *Id.* at 1107. Determining that the OSSA—by offering Singer restricted-duty status and advancing him leave to obtain in-patient treatment—provided Singer his entitled prospective opportunity to be rehabilitated, this court held that OSSA satisfied GERA. *Id.* The GERA, this court emphasized, imposes upon an employer only the "duty ... to provide a *reasonable accommodation,* not necessarily the best accommodation" for a disability. *Id.* (emphasis added).

This court held further that a "reasonable accommodation" under GERA need not include a *retroactive* accommodation, thus the OSSA need not provide Singer a "fresh start." This court reasoned that the Americans with Disabilities Act of 1990(ADA), *see* 42 U.S.C. § 12114(c)(4) (1994), as incorporated by GERA, *see* 2 U.S.C. § 1202(a), permits an employer to hold an alcoholic employee to the same performance and behavior standards as other employees, and that an employer need only accommodate known disabilities. *Singer I,* 95 F.3d at 1107–08. Thus, this court held that the OSSA had no GERA-imposed duty to accommodate Singer's disabilities until Singer informed the OSSA of his alcoholism. *Id.*

This court also affirmed the Hearing Board's holding that Singer's depression constitutes a disability under the GERA. Nonetheless, this court found that the same reasonable accommodations that OSSA gave to Singer to accommodate his alcoholism also reasonably accommodated his depression. *Id.* at 1108–09. This court therefore remanded the case to the Hearing Board with instructions to revoke "all retroactive relief granted by the [Hearing Board] to be effective prior to October 28, 1993, the date when the [OSSA] is chargeable with having been informed of Singer's disabilities." *Id.* at 1109.

On remand, the Hearing Board denied the OSSA's motion to vacate the award of attorney fees and costs. The Hearing Board found that Singer was still a "prevailing party," even in light of this court's decision in *Singer I,* and determined that the $32,435.98 in fees and $2909.32 in costs it had previously awarded Singer in its July 30, 1996 decision were still appropriate. *Singer v. Office of the United States Senate Sergeant at Arms (Capitol Police),* SFEP Case No. 94–010 (Jan. 27, 1997) (*January 27, 1997 Hearing Board Decision* ).

Once again, the OSSA appealed the Hearing Board's decision to the Senate Ethics Committee. The Senate Ethics Committee affirmed the Hearing Board's determination that Singer was a "prevailing party" in his GERA suit against the OSSA, but found that the amount of fees and costs constituted an abuse of discretion because Singer achieved such limited success in his lawsuit. *October 6, 1997 Senate Ethics Committee Decision* at 3. Thus, the Senate Ethics Committee reduced the amount of fees and costs by 70%, to a total award of $12,301. *Id.* The OSFEP subsequently entered the Senate Ethics Committee's decision in its records as a final decision.

The OSSA appeals the Senate Ethics Committee's decision, arguing that Singer is not entitled to any attorney fees or costs under GERA. Singer also appeals the Ethics Committee's decision, arguing that the Ethics Committee erred in reducing the Hearing Board's award by 70%. This court consolidated the appeals for review.

II.

This court has jurisdiction to review decisions of the Senate Ethics Committee, entered as final decisions of OSFEP, under 2 U.S.C. § 1209(a). Section 1209(c) permits this court to set aside the Senate Ethics Committee's decision only if it is: "(1) arbitrary, capricious, an abuse of discretion, or otherwise not consistent with law; (2) not made consistent with required procedures; or (3) unsupported by substantial evidence." 2 U.S.C. § 1209(c).

Singer bases his claim for attorneys fees and costs on the GERA, 2 U.S.C. § 1207(h). Section 1207(h) directs a Hearing Board to, upon finding "a violation [of the GERA,] order such remedies as would be appropriate if awarded under section 706(g) and (k) of the Civil Rights Act of 1964," 42 U.S.C. § 2000e–5(g), (k) (1994). Section 706(k) of the Civil Rights Act of 1964, in turn, permits a court to award reasonable attorney fees and costs to a "prevailing party." 42 U.S.C. § 2000e–5(k). Thus, in order for Singer to recover any fees and costs in this lawsuit, this

court must find that the Senate Ethics Committee properly affirmed the Hearing Board's findings both that the OSSA violated the GERA and that Singer was a prevailing party in his lawsuit.

The Supreme Court has given meaning to the term "prevailing party." In *Hensley v. Eckerhart,* the Court held that a prevailing party must "succeed on any significant issue in litigation which achieves some of the benefit the part[y] sought in bringing suit." 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) (citation omitted). The Court noted that this standard is "generally applicable in all cases in which Congress has authorized an award of fees to a 'prevailing party.'" *Id.* at n. 7, 103 S.Ct. 1933. More recently, the Court held in *Farrar v. Hobby* that "a plaintiff 'prevails' when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." 506 U.S. 103, 111–12, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992) (citations omitted); *see also Texas State Teachers Ass'n. v. Garland Indep. Sch. Dist.,* 489 U.S. 782, 109 S.Ct. 1486, 103 L.Ed.2d 866 (1989).

In the case now before this court, the Senate Ethics Committee found, and Singer argues on appeal, that he was a prevailing party in three respects: (1) his lawsuit resulted in OSSA rescinding his ten-day suspension and awarding back pay; (2) the lawsuit "saved his job" with the OSSA; and (3) the lawsuit forced the OSSA to properly accommodate his depression as a disability. However, substantial evidence does not support the Ethics Committee's decision on any of these three points. Moreover, the Ethics Committee based its decision in part on an erroneous legal interpretation of *Singer I.*

First, this court's language in *Singer I* does not support the Senate Ethics Committee's interpretation of that opinion as determining that the OSSA "was not free to discipline Officer Singer for the fifth violation after October 28, 1993 [and there-fore must rescind his ten-day suspension and award back pay]." *October 6, 1997 Senate Ethics Committee Decision* at 2. In *Singer I* this court ruled that GERA did not require an employer to give a disabled employee a "fresh start," and that, while requiring an employer to provide "a reasonable accommodation" for an employee's disabilities, the GERA only imposed this requirement on disabilities "known" to the employer. *Singer I,* 95 F.3d at 1107–08. This court held that the OSSA must reasonably accommodate Singer after his October 28, 1993 admission of alcoholism, and did so by giving him a choice including prospective rehabilitation. *Id.* at 1107. Because the OSSA (and USCP) did not know of Singer's alcoholism until after he had committed his fifth violation and the USCP had begun disciplinary proceedings, and because the OSSA need not give Singer a fresh start, *Singer I* permits the OSSA to discipline Singer for his fifth violation.

Furthermore, the Senate Ethics Committee's incorrect interpretation of *Singer I* also overlooks this court's observation that section 104(c) of the ADA allows an employer to hold "an alcoholic [employee] to the same performance and behavior standards to which all other employees are held." *Id.* (citation omitted). Under the *Singer I* interpretation of the ADA, the OSSA has the right to require Singer, an alcoholic, to comply with the call-off rule along with all of its other employees. Thus, provided it met GERA's "reasonable accommodation" requirement, the ADA permits the OSSA to discipline Singer in the same manner as other employees for violating the call-off rule.

Second, Singer argues that he is a prevailing party because his GERA complaint saved his job with the OSSA. The record does not support this assertion either. Under the DRB proceedings, Chief Abrecht offered Singer the Last Chance Agreement, which "saved" his job. After some modifications to incorporate Singer's concerns, Chief Abrecht implemented the

agreement, thereby assuring Singer's continued employment. The DRB proceedings, however, are internal to the USCP and separate from Singer's GERA lawsuit. The record on appeal contains no evidence that the result of the DRB proceedings would have been different without Singer's lawsuit. Thus, Singer's continued employment after initiation of his GERA complaint does not make him a "prevailing party" in his litigation.

Third, and finally, Singer asserts that this court's holding in *Singer I* that Singer's depression rose to the level of a disability within the meaning of the GERA makes him a prevailing party. The OSSA had argued throughout this case that depression was not recognized under GERA as a disability, and thus the OSSA need not accommodate it as a disability. Although this issue was contested and actually litigated by the parties, Singer's success in convincing this court to recognize his depression as a qualifying disability cannot alone make Singer a prevailing party in his lawsuit. "Of itself, 'the moral satisfaction [that] results from any favorable statement of law' cannot bestow prevailing party status." *Farrar v. Hobby,* 506 U.S. at 112, 113 S.Ct. 566 (citation omitted). In order to support prevailing party status, recognition of Singer's depression must confer some material benefit on Singer. *See Farrar v. Hobby,* 506 U.S. at 111–12, 113 S.Ct. 566; *Hensley v. Eckerhart,* 461 U.S. at 433, 103 S.Ct. 1933.

Singer's depression entitles him to no benefits beyond the accommodations the OSSA already gave him due to his alcoholism, which this court determined in the preceding discussion to be insufficient to make him a "prevailing party." The Hearing Board granted the same relief for Singer's depression and his alcoholism, *see Singer I,* 95 F.3d at 1108, and the Senate Ethics Committee and this court subsequently agreed that his alcoholism and depression entitled Singer to the same accommodations. In *Singer I,* this court held that the OSSA need not grant Singer a fresh start for his depression and that it need only accommodate known disabilities, and remanded the case for "removal of all retroactive relief." *Id.* at 1108–09. Thus, Singer's success in achieving recognition of his depression as a statutory disability does not "materially alter the legal relationship between the parties," *Farrar v. Hobby,* 506 U.S. at 111–12, 113 S.Ct. 566, and does not make Singer a "prevailing party" eligible for attorney fees or costs.

In sum, nothing in the record supports Singer's status as a "prevailing party." This court has considered the parties' other arguments, and found them either unpersuasive or unnecessary to address. Because Singer was not a "prevailing party" in his GERA claim against the OSSA, he is not eligible to recover attorney fees or costs. Accordingly, this court reverses the Senate Ethics Committee's decision.

### COSTS

Each party shall bear its own costs.

*REVERSED.*